FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

MAR  4  10 53 AM '05

Joan Heffington
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 316-788-0901
Fax: 316-788-7990

BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

JOAN HEFFINGTON
  On Behalf of Minor Son, G█████ M█████

                Plaintiffs,

     vs.

DISTRICT COURT OF SEDGWICK COUNTY
  WICHITA, KANSAS
NOLA FOULSTON, Sedgwick Co. District Attorney
JULIA CRAFT -ROCHAT
          Defendants.

Case No. 05-4028 SAC

Pursuant to 42 U.S.C. 1983

### A.  COMPLAINT

    **COMES NOW** the plaintiffs, Joan Heffington, on behalf of her minor son, G█████ M█████, *pro se*, and files its petition against the defendants as follows:

### B.  PARTIES

1.    Plaintiff Joan Heffington, is an individual representing herself and her minor son, G█████ M█████, *pro se*, both with residence located at 7145 Blueberry Lane, Derby, Kansas 67037.  Plaintiff Joan Heffington is hereinafter referred to as "plaintiff" or "Mrs. Heffington." Minor son, G█████ M█████, is hereinafter referred to as "plaintiff," "G█████ M█████" or "G█████"

2.    Defendant, District Court of Sedgwick County, Wichita, Kansas, is a Kansas government entity with principle offices located at 525 N. Main, Wichita, Kansas 67211.  District Court of Sedgwick County, Wichita, Kansas, may be served by and through the Sedgwick County Clerk, Don Brace, at his principle place of business: 525 N. Main, Suite 211, Wichita, Kansas 67203.  Defendant, District Court of Sedgwick County, Wichita, Kansas, is hereinafter referred to as "defendant," "District Court of Sedgwick

County" or "Sedgwick County Juvenile Court."

    3.   Nola Foulston, District Attorney for the District Court of Sedgwick County, Wichita, Kansas is a district attorney with principle offices located at 535 N. Main, 2nd Floor, Wichita, Kansas 67203. Defendant, Nola Foulston, may be served by and through herself at her principle place of business: 535 N. Main, 2nd Floor, Wichita, Kansas 67203. Defendant, Nola Foulston, District Attorney for the District Court of Sedgwick County, Wichita, Kansas, is hereinafter referred to as "defendant," "Sedgwick County District Attorney", "D.A.," or "Ms. Foulston."

    4.   Defendant, Julia Craft-Rochat, is a District Court of Sedgwick County court-appointed attorney with principle place of business at the Sedgwick County Juvenile Court, 1015 S. Minnesota, Wichita, Kansas 67211. Defendant, Julia Craft-Rochat, may be served by and through herself, at her principle place of business: Sedgwick County Juvenile Court, 1015 S. Minnesota, Wichita, Kansas 67211. Defendant Julia Craft-Rochat, is hereinafter referred to as "defendant," "Julia Craft-Rochat," "Julia" or "Ms. Craft."

## C.   FACTS PERTAINING TO THE PARTIES

    5.   Plaintiffs are individuals residing in the State of Kansas. Plaintiff Joan Heffington is the parent of minor son, G███ M███

    6.   Joan Heffington is the C.E.O. and Founder of the Association for Honest Attorneys (A.H.A!), a non-profit organization dedicated to discouraging litigation, improving the legal system, and seeking justice for _all_. Mrs. Heffington founded the A.H.A! in Sedgwick County, Kansas, in April, 2003.

    7.   Defendants are government entities and state actors representing the District Court of Sedgwick County and it Juvenile Department, an agency which acts on their behalf for the county. Both are located in Wichita, Kansas, which is in Sedgwick County, Kansas.

    8.   Nola Foulston is the Sedgwick County District Attorney representing the District Court of Sedgwick County and the District Court of Sedgwick County Juvenile Department.

2.

9.    Julia Craft-Rochat is a court-appointed attorney provided by the District Court of Sedgwick County Juvenile Department to represent Joan Heffington's minor son, G████ M████.

10.    Charges were brought by the Sedgwick County District Court/D.A. against G████ on three occasions: July 2002, July 2003, and November 2004 for incidents that occurred within Sedgwick County, Kansas.

11.    The charges brought against G████ in July 2002 were for Filing a False Alarm and in July 2003, for Criminal Deprivation of a Motor Vehicle. Both times, the charges were unwarranted, unethical and/or false. Mrs. Heffington felt they were brought in retaliation toward her for a lawsuit she filed in 2001, for which she filed an appeal in 2002.

12.    Due to the litigation she was involved in at the time, Mrs. Heffington was unable to obtain legal counsel for G████. Julia Craft-Rochat was court-appointed to represent G████ on both occasions.

13.    On January 10, 2002, G████ told his mother that someone intended to "shoot up" the Derby Middle School the next day. Ascertaining that her son was telling the truth, Mrs. Heffington called the police who took a report. The Derby police did not believe G████, however, a JYAC officer told Mrs. Heffington later that night that she felt the police had made a mistake. A student was investigated and arrested by Derby police the next morning as the alleged shooter, but never charged. Instead, criminal charges were brought against G████ six months later for Filing a False Alarm.

14.    The charges against G████ by the Sedgwick County District Attorney were brought in July, 2002, six months after the incident occurred and several months after Mrs. Heffington had filed a Notice of Appeal in her previous litigation. G████ had no previous record.

15.    The matter dragged on for over 18 months and caused G████ much anguish and distress. Once a gifted student, his grades plummeted. He was severely depressed, remained in therapy for two years and was prescribed anti-depressant medication.

16.    Mrs. Heffington also suffered emotionally and physically due to the wrongful persecution of

3.

her child.  She experienced bouts of depression, headaches, back and neck pain, neurodermatitis, eye

ulcers, contact dermatitis, digestive problems, paranoia, osteoarthritis and anxiety attacks.

17.  Mrs. Heffington was legally advised that these charges should just be dismissed; however,

the plaintiffs repeatedly refused.  She contacted a Sedgwick County Commissioner and wrote to

Sedgwick County District Attorney Nola Foulston, the Kansas Attorney General, and the Governor of

State of Kansas in an effort to get these charges dismissed, but to no avail.

18.  Mrs. Heffington tried on numerous occasions to acquire publicity so that the defendants would

dismiss the charges, but her efforts were ignored.

19.  In late June 2003, Mrs. Heffington discovered the night before G██████ trial that the charges

had been falsely brought for Filing a False *Fire* Alarm.  Just before the trial commenced, Mrs. Heffington

asked Ms. Craft to have the charges dismissed.  Her demands were refused.

20.  The defendants, having considerable experience and knowledge of the law, had always been

aware that the charges against G██████ were false and improper.

21.  The defendants had known all along that two other youths were witness to the alleged shooter's

statements that he intended to shoot up the school at the assembly the next day.

22.  G██████ was made to go through an entire trial anyway in which the judge was hostile and

looked for something else to charge him with.  Although he finally agreed to dismiss the charges, the

judge threatened G██████ that there was "no telling what would happen to him if he ever appeared in his

courtroom again."

23.  Mrs. Heffington wrote about such outrageous government conduct in her book, *TEN SECRETS*

*You Must Know Before Hiring a Lawyer*, published in September, 2003.  She felt that the "False Alarm"

charges against G██████ were in retaliation against her by the defendants in a lawsuit she had filed in

2001.

24.  G██████ continued to feel depression and low self-esteem.  On March 7, 2003, he gypped

school with some friends and borrowed his friend's truck to go for a ride.  He drove one block and was

4.

arrested by Derby Police for Burglary, Auto Theft and Driving Without a License.

25.    G████████was detained and questioned by Derby police (without a parent present) for almost four hours before being taken to the Sedgwick County Juvenile Youth Center. Mrs. Heffington was called at approximately 3:45 p.m. to come pick him up. In the presence of a JYAC intake officer, G████████somberly told his mother that it didn't matter, because "you heard what that judge said... I'm going to be found guilty anyway."

26.    Four months later in July, 2003, G████████ was charged by the Sedgwick County District Attorney in the above incident for Criminal Deprivation of a Motor Vehicle. Charges were also brought against G████████ friends, but Mrs. Heffington later learned that they were allowed to take diversion.

27.    In October, 2003 a meeting was held by Interfaith Ministries in Wichita for the parents and juveniles involved in the above matter. During this meeting, Mrs. Heffington heard one boy admit that he was present when he heard G████████friend tell him it was okay to borrow his truck.

28.    The next day, the Juvenile Court contacted Mrs. Heffington to tell her that it looked like G████████was going to be denied diversion, and that G████████needed to come in for another meeting.

29.    Plaintiffs complied, and Mrs. Heffington told the case worker that she believed G████████was being persecuted because of her business, the "A.H.A!" Two days later, Mrs. Heffington received a letter from the D.A. stating that G████████ was denied diversion.

30.    Even with evidence of consent given, the defendants refused Mrs. Heffington's pleas to dismiss these charges against G████████ The emotional distress suffered by the plaintiffs continued.

31.    G████████continued to fail many classes in school,. He remained withdrawn, depressed, and was hostile toward his mother and other family members.

32.    During this time, G████████was diagnosed as having "Oppositional Defiant Disorder" by his therapist.

33.    Although the Sedgwick County Juvenile Court allowed the other juveniles arrested to take diversion in this matter, G████████was ordered to stand trial. The matter continued to be dragged out.

34.  On March 16, 2004, G████, his father and Mrs. Heffington met with Ms. Craft before

going in to the courtroom for his trial.  Ms.Craft told G████ that his friends would not tell the truth

and that he could plead no contest rather than go into trial.  She urged him to plead no contest.

35.  Feeling that this was not sound legal advice, Mrs. Heffington told Ms. Craft that she would like

to step out into the hall to talk to G████ privately before he made his decision.  Ms. Craft told her she

could not.  When Mrs. Heffington asked her what would happen if she did this anyway, she told her that

she would call security and have Mrs. Heffington restrained.

36.  Ms. Craft continued to pressure G████ for a decision.  Under duress and convinced that he

would be found guilty anyway, he agreed to plead "no contest" to the charges of Criminal Deprivation of a

Motor Vehicle.

37.  In May, 2004, having been denied diversion and without any prior record, G████ was

sentenced to one year probation for the above charges.

38.  In July, 2004, G████ was ordered by the Sedgwick County Juvenile Court to undergo a drug

and alcohol evaluation.  At an agency called New Attitudes, plaintiffs were made to wait in an empty

office for 3 hours.  The agency contacted G████ probation officer during this time, and without ever

having had a U.A., G████ was told he would have to have 13 hours of drug/alcohol counseling and 9

hours of anger management, and would have to pay for each visit.

39.  Plaintiffs were also told later by the same court-appointed agency that G████ would also

have to attend two Alcoholic Anonymous meetings per week in addition to the above counseling.

40.  Mrs. Heffington and G████ expressed their disbelief in the results of the written test

evaluation, since although he had experimented a few times, G████ had never had a drug or alcohol

problem.

41.  Distraught over the outcome, G████ was hostile and argumentative with his mother on the

drive home.  She feared he was suicidal, and that he was going to jump out of her moving vehicle.

42.  Mrs. Heffington planned to ask her church the following Sunday to pray for G████, and put

6.

a prayer request in the offering plate. She was in shock when her pastor later announced from the pulpit that Congressman Todd Tiahrt's 16-year old son had committed suicide that same Friday.

43.    A Central Christian Church pastor prayed for G████ with Mrs. Heffington over the phone two days later. Having had some experience with the juvenile authorities, he later commented to her concerning his disdain for "court-appointed attorneys" in Wichita.

44.    Mrs. Heffington decided to pursue a second drug/alcohol evaluation from a different agency. In late July 2004, G████completed their test, which determined that he needed no treatment whatsoever.

45.    In September, 2004, G████attended a party in Sedgwick County after a high school football game. No adults were present when police raided the home in question. G████ was one of 67 youths who were given breathalyzer tests without being read their Miranda Rights by police.

46.    A friend of G████'s stated to Mrs. Heffington later that all Derby football players were allowed to leave the party, even though they had been drinking.

47.    In November 2004, the defendants engaged in selective prosecution by naming G████ as was one of only eight youths charged with Possessing/Consuming Alcohol by a Minor at the party above.

48.    In a phone conversation on November 22, 2004, a judge in Wisconsin told Mrs. Heffington that "that's what they do… if they can't get to you, they go after your children." Three months earlier, Mrs. Heffington had heard the same comment from an old high school friend who had been in the Army.

49.    Continuing to ignore the suffering of plaintiffs, the Sedgwick County D.A. again refused Mrs. Heffington's requests for dismissal of these charges in January, 2005. She had contacted 12 attorneys to represent her son, and even wrote to her church to ask for their intervention, but to no avail.

50.    Mrs. Heffington on her own behalf and through the A.H.A! made every effort to try and resolve these issues without litigation. The Sedgwick County D.A. refused to dismiss the charges again, even though plaintiffs had threatened to file suit for ineffective assistance of counsel and denial of due process.

51.    Mrs. Heffington's emotional distress and mental anguish continued, and she suffered an

7.

anxiety attack in church the Sunday before G██████hearing on Feb. 16, 2005. She was taken by ambulance to the emergency room at the request of a doctor present.

52. Due to her emotional state, Mrs. Heffington was unable to attend G██████ hearing on February 16, and it was continued to February 28, 2005. At that time, Ms. Craft-Rochat told Ms. Heffington's husband that she did not like her name on the A.H.A!'s website list of "Lawyers to Avoid."

53. Plaintiffs are without legal counsel in this matter, although they tried with due diligence to acquire an attorney to represent them. Therefore, the *doctrine of special circumstances* applies concerning plaintiffs' lack of legal representation and counsel should be appointed by this court.

54. Plaintiffs have demanded that defendants take action to make plaintiffs whole for their losses. Defendants have refused plaintiffs' demands.

55. Joan Heffington has filed this petition on behalf of herself and her minor son G████ M████ who have been, and continue to be, unlawfully persecuted or unjustly treated by the legal system in Kansas, its employees, representatives and state actors.

## D.  LAW AND ANALYSIS

Defendants, District Court of Sedgwick County Juvenile Department, Wichita, Kansas, Nola Foulston, District Attorney, and Julia Craft-Rochat violated numerous city, county, state and national laws, statutes, ordinances and regulations, including but not limited to: 42 USC 1983, denial of plaintiffs' rights to due process of law under the 5th and 14th Amendments to the U.S. Constitution. Plaintiffs believe the United States District Court has jurisdiction for the aforementioned reasons and because the defendants represent state agencies. Discrimination occurred when the defendants engaged in selective prosecution toward G████ M████. The overt acts of fraud in this matter which were engaged in by the defendants involved developing a plan to persecute plaintiff's son and include, but are not limited to: telephone calls, verbal and written communications, and issuing false and/or unwarranted charges against G██████ Plaintiffs allege each of the following claims separately against all defendants.

8.

## E.  CAUSES OF ACTION AGAINST DEFENDANTS

### 1.  Civil Conspiracy/Collusion

56.  Plaintiffs incorporate by reference paragraphs 1 through 55 of this Complaint.

57.  The conduct of the above named defendants in agreeing with other state actors to participate in a plan to cause persecution of plaintiffs because of Ms. Heffington's previous litigation, her book, and the A.H.A! constitutes civil conspiracy/collusion.

58.  The defendants' participation in a plan to cause Mrs. Heffington defamation and ruin her business was with full knowledge that such acts, and failures to act, were substantially certain to result in injury and detriment to the plaintiffs and their family.

59.  The conduct of the above named defendants constitutes civil conspiracy/collusion.

60.  As a result of the above named defendants' fraud by commission, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the civil conspiracy/collusion; and (v) any other relief deemed just and equitable by the court.

### 2.  Fraud by Commission

61.  Plaintiffs incorporate by reference paragraphs 1 through 60 of this Complaint.

62.  The defendants participation in a plan to cause Mrs. Heffington defamation, ruin her business and thwart the efforts of the A.H.A! by persecuting her son through unethical, unwarranted and/or false charges constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiffs to act to their detriment.

63.  At all relevant times, the defendants' participation in the plan to persecute Mrs. Heffington's son

was willful, and with full knowledge that such conduct was substantially certain to result in injury and detriment to the plaintiffs and their family.

64. The overt acts of fraud engaged in by the defendants include, but are not limited to: telephone calls, verbal and written communications, and the issuance of false and/or unwarranted charges against G████ M████

65. The conduct of the above named defendants constitutes fraud by commission.

66. As a result of the above named defendants' fraud by commission, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the fraud by commission; and (v) any other relief deemed just and equitable by the court.

### 3. Fraud Through Concealment and Misrepresentation

67. Plaintiffs incorporate by reference paragraphs 1 through 66 of this Complaint.

68. The defendants' conduct in participating in a plan to cause Mrs. Heffington defamation, ruin her business and thwart the efforts of the A.H.A! by persecuting her son through unethical, unwarranted and false charges constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiffs to act to their detriment.

69. At all relevant times, the defendants' participation in a plan to persecute Mrs. Heffington's son G████ was willful, and with full knowledge that such conduct was substantially certain to result in injury and detriment to the plaintiffs and their family.

70. The overt acts of fraud engaged in by the defendants include, but are not limited to: telephone calls, verbal and written communications, and the issuance of false and/or unwarranted charges against G████ M████

10.

71.   At all relevant times, the defendants had a legal duty to dismiss the unwarranted, unethical and/or false charges against G███████M██████.

72.   Defendants breached their duty to the plaintiffs.

73.   The conduct of defendants in this matter constitutes fraud through concealment and misrepresentation.

74.   As a result of the above-named defendants' fraud by concealment and misrepresentation, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the fraud by concealment and misrepresentation; and (v) any other relief deemed just and equitable by the court.

### 4.   Ineffective Assistance of Counsel

75.   Plaintiffs incorporate by reference paragraphs 1 through 74 of this Complaint.

76.   The conduct of defendant Ms. Craft in agreeing with other state actors to participate in a plan to cause persecution of plaintiffs in retaliation toward Mrs. Heffington for her previous litigation, her book, and the A.H.A! by dragging the legal matters out unnecessarily and providing insufficient, unsound and inadequate legal assistance to plaintiffs constitutes ineffective assistance of counsel.

77.   Ms. Craft's  participation in a plan to cause emotional distress to plaintiffs by ignoring nearly all of Mrs. Heffington's written/verbal communications and dragging the matters out unnecessarily violated her legal duty to provide effective assistance of counsel to G███████and give him the best possible defense, and was with full knowledge that her acts, and failures to act, were substantially certain to result in injury and detriment to plaintiffs.

78.   Defendant Ms. Craft breached her legal duty owed to plaintiffs.

11.

79.   The conduct of defendant Ms. Craft constitutes ineffective assistance of counsel.

80.   As a result of Ms. Craft's ineffective assistance of counsel, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the ineffective assistance of counsel; and (v) any other relief deemed just and equitable by the court.

### 5.   Detrimental Reliance

81.   Plaintiffs incorporate by reference paragraphs 1 through 80 of this Complaint.

82.   In representing them as counsel, plaintiffs relied upon the representations of defendant Julia Craft-Rochat that she was acting in good faith and offering representation by a competent attorney acting in a manner worthy of legal experience that was representative of a legal system which rendered true justice in all legal matters.

83.   Plaintiffs relied in good faith upon the representations and actions of defendant Ms. Craft and other state actors that they would act in a manner that was worthy of a legal system which rendered true justice in all legal matters.

84.   Plaintiffs relied in good faith that the conduct of the defendants was representative of a legal system which provided "justice for *all*," and which made no distinction between the rich and the poor as guaranteed in the Pledge of Allegiance.

85.   Plaintiffs were justified in their reliance.

86.   Plaintiffs relied to their detriment, and as a result, suffered damages in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00; (ii) pre- and post-judgment

interest; (iii) costs, including reasonable attorney's fees, for this action; and (iv) any other relief deemed

just and equitable by the court.

### 6.    Denial of Due Process

#### Violations of Plaintiffs' 5th Amendment Rights
#### (as incorporated to the States through the 14th Amendment)

87.    Plaintiffs incorporate by reference paragraphs 1 through 86 of this Complaint.

88.    Under 42 USC 1983 color of law, the conduct of the defendants to participate in a plan to

persecute G███████M████ through unethical and unwarranted charges under the color of law caused

plaintiffs as citizens of the United States to be deprived of their right to life, liberty, and  property without

due process of law under the 5th and 14th Amendments secured by the U. S. Constitution.

89.    Acting under the color of state law @42 USC 1983, the defendants' participation in a plan to

persecute G███████ M████ included influencing state actors to infringe on the plaintiffs' civil rights

protected by the 5th Amendment right to due process of law protected by the U.S. Constitution.

90.    Discrimination occurred in the form of selective prosecution when G███████ was charged with

Possession/Consumption of Alcohol By a Minor while all of the football players were allowed to leave the

party, and when G████████ friends were allowed to seek diversion in the truck incident but he was ordered

to stand trial.

91.    The conduct of the defendants in persecuting Mrs. Heffington's son G██████ through false,

unwarranted and unethical charges acted to deprive plaintiffs of life, liberty and property without due

process of law, and causing the State of Kansas to deprive them of such, constitutes a violation of the

plaintiffs' rights under the Fifth Amendment to the United States Constitution, as incorporated to the

States through the 14th Amendment to the United States Constitution.

92.    The defendants owed plaintiffs a duty under the 5th and 14th Amendments not to violate

their rights under the United States Constitution as citizens of the United States.

93.    Defendants breached their duty owed to plaintiffs.

13.

94.   The defendants' conduct constitutes liability to the plaintiffs for their injuries.

95.   As a result of the defendants' conduct to deprive plaintiffs of life, liberty and property without due process of law and infringing on plaintiffs' civil rights protected by the 5th Amendment right to due process of law under the U.S. Constitution by causing the state actors to breach their duty owed the plaintiffs, plaintiffs have been damaged in excess of $75,000.

WHEREFORE, plaintiffs respectfully request judgments of the court against the defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees for this action; iv) injunctive relief enjoining all defendants from continuing the violation of plaintiffs' due process rights; and (v) any other relief deemed just and equitable by the court.

### 7.   Outrageous Government Conduct Causing Severe Emotional Distress To Third Persons – Immediate Family

96.   Plaintiffs incorporate by reference paragraphs 1 through 95 of this Complaint.

97.   The conduct of the above named defendants in participating in a schemed plan to defraud Mrs. Heffington and cause her intentional emotional distress by bringing unwarranted, unethical and/or false charges against her son, G█████ in a retaliatory effort to induce her to drop the appeal of her previous lawsuit, ruin her business, and thwart the efforts of the A.H.A! was extreme and outrageous.

98.   The outrageous conduct of the above defendants in the above plan led them to bring unwarranted, unethical and/or false charges against G█████ M███ on three occasions to cause intentional emotional distress to a third person, his mother, Joan Heffington.

99.   As a result of the defendants' conduct in causing unwarranted charges to be brought against G█████ M███, Mrs. Heffington suffered severe emotional distress and bodily harm from July, 2002 to the present while waiting for the impending trials in the aforementioned matters.

100.   The conduct of the defendants is continuing and ongoing.

101.   The conduct of the above named defendants  in causing severe emotional distress to a third

14.

person, Mrs. Heffington, was reckless and intentional, and with a high degree of risk of harm to her.

102.   The above named defendants were indifferent to the consequences of their conduct under circumstances which involved danger to life or safety of plaintiffs. They had reason to know of the facts, were indifferent to the harm that could result, and brought meritless charges against G▪▪▪▪▪ anyway.

103.   The above named defendants were substantially certain that their conduct would result in severe emotional distress to Mrs. Heffington.

104.   The conduct of the above named defendants in causing unwarranted charges to be brought against G▪▪▪▪▪ M▪▪▪ constitutes outrageous government conduct causing severe emotional distress to a third person in plaintiffs' immediate family, namely Mrs. Heffington.

105.   As a result of the outrageous conduct causing severe emotional distress to Mrs. Heffington, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney's fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the outrageous government conduct causing severe emotional distress to Mrs. Heffington; and (v) any other relief deemed just and equitable by the court.

## 8.  Outrageous Conduct Causing Severe Emotional Distress
### (TORT OF OUTRAGE)

106.   Plaintiffs incorporate by reference paragraphs 1 through 105 of this Complaint.

107.   The defendants conduct in participating in a plan to persecute Mrs. Heffington's son, G▪▪▪▪▪ with unwarranted and unethical charges in order to cause plaintiffs intentional emotional distress was extreme and outrageous.

108.   At all relevant times, the defendants participation in the aforementioned plan was intentional,

15.

and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to plaintiffs and their family.

109. The defendants' participation in a plan to persecute G█████ M███ involved influencing other attorneys and state actors, including, but not limited to: employees and representatives of the City of Derby, the Derby Police Department, New Attitudes, Sedgwick County Sheriff's Office, Sedgwick County District Attorney's Office, Sedgwick County Juvenile Court, the State District Attorney and the Governor of the State of Kansas not to assist plaintiffs in obtaining legal assistance and/or representation, or to assist them in their quest for justice.

110. By participating in a plan to violate plaintiffs' rights, the defendants' conduct caused the aforementioned state actors to breach their duty owed the plaintiffs. The defendants' conduct was grossly disproportionate under such circumstances, and must have been inspired by malice, so as to amount to abuse of official power that shocks the conscience of a reasonable person.

111. G█████ suffered severe emotional distress and bodily harm as a result of the defendants participation in the plan to persecute him, including, but not limited to: depression requiring continued therapy, oppositional defiant disorder, lack of self-esteem, and poor grades in school. Mrs. Heffington suffered anxiety attacks, headaches, back and neck pain, neurodermatitis, eye ulcers, contact dermatitis, digestive problems, paranoia and osteoarthritis.

112. The defendants' outrageous conduct included, but was not limited to: persecuting G█████ with unwarranted charges over a period of three years, intentionally dragging the matters out to cause emotional distress, ignoring evidence, causing an innocent child to go through with a needless trial, allowing threats by a hostile judge, selective prosecution, and unreasonable/unwarranted probation requests.

113. The conduct of the defendants was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Reciting the facts in this matter to an average person would cause resentment toward defendants and lead them to exclaim: "Outrageous!"

16.

114.   The conduct of the defendants in this matter to cause plaintiffs to act to their detriment constitutes intentional infliction of emotional distress and liability to the plaintiffs for their injuries.

115.   As a result of the outrageous conduct and intentional infliction of emotional distress by the defendants, plaintiffs and their family have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against all of the defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the intentional infliction of emotional distress; and (v) any other relief deemed just and equitable by the court.

Respectfully submitted,

JOAN HEFFINGTON
7145 Blueberry Lane
Derby, Kansas  67037
Phone:  316-788-0901
Fax:  316-788-7990
E-mail:  Joancheff@aol.com

By: _____
Joan E. Heffington, *pro se*

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Topeka, Kansas as the location for the trial in this matter.

JOAN HEFFINGTON
7145 Blueberry Lane
Derby, Kansas  67037
Phone:  316-788-0901
Fax:  316-788-7990
E-mail:  Joancheff@aol.com

By: _____
Joan E. Heffington, *pro se*

17.

DEMAND FOR JURY TRIAL

Plaintiffs respectfully request that the issues in this matter be heard by a jury.

Respectfully submitted,

**JOAN HEFFINGTON**
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 316-788-0901
Fax: 316-788-7990
E-mail: Joaneheff@aol.com

By: _____
(Joan E. Heffington, *pro se*

18.

## Certificate of Service

I hereby certify that on this 4th day of March, 2005, a copy of the above and foregoing Complaint was sent certified and deposited in the United States Mail, postage prepaid and properly addressed, to:

Don Brace, County Clerk
Sedgwick County District Court
525 N. Main, Suite 211
Wichita, Kansas 67203

Nola Foulston, D. A.
Sedgwick County District Court
535 N. Main, 2nd Floor
Wichita, Kansas 67203

Julia Craft-Rochat, Atty at Law
Sedgwick County Juvenile Court
1015 S. Minnesota
Wichita, Kansas 67211

Joan E. Heffington, *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Ph: 316-788-0901
Fx: 316-788-7990
E-mail: Joaneheff@aol.com

19.